# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                        **Case No. 10-CR-31**

**ANGELA KOERNER**
        **Defendant.**

## SENTENCING MEMORANDUM

Defendant Angela Koerner pleaded guilty to using a telephone to facilitate drug trafficking, 21 U.S.C. § 843(b), and I set the case for sentencing. In imposing sentence, I first calculated defendant's advisory sentencing guideline range, then selected the ultimate sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Panice, 598 F.3d 426, 441 (7th Cir. 2010).

### I. GUIDELINES

Defendant's pre-sentence report ("PSR") set a base offense level of 24, U.S.S.G. § 2D1.1(c)(8), then subtracted 2 levels because she qualified for the safety valve, § 2D1.1(b)(11), and 3 levels for acceptance of responsibility, § 3E1.1, for a final offense level of 19. Coupled with her criminal history category of I, level 19 created an imprisonment range of 30-37 months. Neither side objected to these calculations, which I adopted.

### II. SECTION 3553(a)

**A.  Sentencing Factors**

Section 3553(a) directs the sentencing court to consider:

(1) the nature and circumstances of the offense and the history and

characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory] sentencing [guideline] range[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute requires the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2). Id. While the guidelines serve as the starting point in making this determination, Gall v. United States, 552 U.S. 38, 49 (2007), the court may not presume that a guideline sentence is the correct one, Nelson v. United States, 129 S. Ct. 890, 892 (2009). Rather, the court must make an independent determination, without any thumb on the scale favoring a guideline sentence, United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007), taking into account the types of sentences available, the relevant § 3553(a) factors, and the arguments of the parties, see Gall, 552 U.S. at 49-50.

**B.    Analysis**

    **1.    The Offense**

Defendant's prosecution arose out of the government's investigation of a Hmong gang

2

called the MOD, which sold methamphetamine and ecstasy in Wisconsin and elsewhere. A gang member named Vang developed a customer base in Appleton, Wisconsin, which included this defendant. Law enforcement learned that Vang stopped at defendant's apartment during his trips to Appleton, and monitoring of phones associated with the gang revealed that defendant received distribution quantities of methamphetamine from Vang weekly. She also assisted Vang's operation by coordinating calls with other Appleton area customers, advising Vang of arrests of Appleton area customers, and obtaining a new cell phone for Vang to use when a co-conspirator was arrested. The PSR in ¶¶ 50-53 provided examples of her phone calls in furtherance of this activity.

Agents arrested defendant at her residence on February 10, 2010, and in a post-arrest statement she admitted purchasing methamphetamine and ecstasy from Vang. The parties agreed that, based on phone taps, her statements, and the debriefs of co-defendants, defendant should be held responsible for 30 grams of methamphetamine and 300 ecstasy pills. Defendant explained that she became addicted to methamphetamine, leading to her involvement with Vang and in dealing. She indicated that she did not make significant profit but rather dealt to support her own habit.

### 2. The Defendant

At age twenty-six, defendant's prior record was limited to a 2007 bad check case. Substance abuse, as she admitted, has been her most significant problem. She started drinking and smoking marijuana in her early teens and regularly used methamphetamine from 2006 until her arrest in 2010. However, after her arrest in this case, defendant effected a significant turn-around, completing in-patient treatment at Genesis and regularly attending out-patient treatment thereafter. Defendant's out-patient counselor indicated that she was open

and honest in their sessions. Defendant submitted negative drug screens and complied with her other conditions of pre-trial release.

Defendant earned a GED after dropping out of school and compiled a decent work record, despite her drug addiction, as set forth in ¶¶ 137-141 of the PSR. Shortly before sentencing, she obtained a new job at a car wash. She had two children, ages two and one.

### 3. The Sentence

The guidelines called for a term of 30-37 months in prison, but under the circumstances of this case a sentence served in the community sufficed to satisfy the purposes of sentencing. First, while drug trafficking is obviously a very serious crime, defendant became involved in order to feed her own addiction; she profited little; and it did not appear that she was a dealer of great significance. She assisted Vang, part of an established drug trafficking organization, primarily as a means of obtaining drugs for herself. Therefore, I found prison unnecessary as a means of providing just punishment based on her particular conduct and motivation.

Second, given her lack of any significant prior record, her good progress in treatment, and her compliance with conditions of pre-trial release, I found prison unnecessary to protect the public and deter. So long as she remained clean, I found defendant unlikely to re-offend.

Third, the government indicated that defendant cooperated with law enforcement after her arrest, providing information about Vang. While the government found the assistance insufficient to support a motion under U.S.S.G. § 5K1.1, it did demonstrate a willingness to sever ties with old associates, making her less likely to re-offend. See United States v. Roque, 536 F. Supp. 2d 987, 990 (E.D. Wis. 2008) ("Although the government did not file a motion under U.S.S.G. § 5K1.1, I may under 18 U.S.C. § 3553(a)(1) consider cooperation as a sign of positive character development and as indicative of a desire to obey the law and live a better

4

life in the future under § 3553(a)(2)(B) & (C)."); see also United States v. Knox, 573 F.3d 441, 453 (7th Cir. 2009) ("[A]s a general matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a § 5K1.1 motion.").

Finally, defendant had two very young children and taking her away from them could have a devastating impact. Defendant's mother indicated that it would not be feasible for the family to care for defendant's children during a prison term, which might make foster care necessary. I was able to fashion a sentence that satisfied the purposes of sentencing and avoided that consequence.

Under all the circumstances, probation seemed the best option. Through supervision, defendant could receive continued drug treatment and employment and educational assistance, while continuing to care for her children. I imposed a period of home confinement as a condition to provide both a measure of punishment and additional structure. A probationary sentence allowed me to maintain defendant under court supervision longer than a period of supervised release after a prison sentence, and given her ability to address her treatment needs in the community this made more sense. I advised defendant that lengthy probation would not be easy for a person with a serious drug problem, and that any violations could lead to revocation and a prison sentence up to the maximum of 4 years. This sentence varied from the guidelines, but because it was based on the particular facts of the case discussed above it created no unwarranted disparity.

### III.  CONCLUSION

Therefore, I placed defendant on probation for a 4 year period. I selected a longer term to ensure monitoring and treatment. As conditions, I ordered defendant to participate in a

program of testing and residential or outpatient treatment for drug and alcohol abuse, and to comply with the conditions of home confinement for a period not to exceed 120 consecutive days. Other terms and conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 8th day of September, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge